32729. LIBERAL FINANCE COMPANY *v.* STATE OF GEORGIA.

DECIDED JANUARY 6, 1950.

*Sidney O. Smith Jr., Sloan & Telford,* for plaintiff in error.
*Jeff C. Wayne, Solicitor-General, Howard T. Overby,* contra.

SUTTON, C. J. The Solicitor-General of the Northeastern Judicial Circuit, in the name of and on behalf of the State, filed a petition in the Superior Court of Hall County to condemn a certain described Ford automobile, alleging that the sheriff, on April 13, 1949, seized said automobile while it was being used to convey, remove, conceal, and store intoxicating liquors and beverages in violation of the law, on a public highway in Hall County, Georgia, and that said automobile was being operated by J. B. Helton, owner and lessee of the vehicle at the time of the seizure. J. B. Helton, as owner and lessee, was duly served with a copy of the condemnation proceeding but he did not appear and defend the case.

The Liberal Finance Company filed an intervention and claim, contending that it was the holder in due course of a conditional-sales-contract transferred to it by the Lee Waldrip Motor Company and that title to the automobile sought to be condemned was in the Liberal Finance Company. It further alleged that after the conditional-sales-contract was transferred to it, Helton made five payments thereon, leaving a balance due on the contract of $840; that if the vehicle was used by Helton as alleged in the petition for condemnation such use was without the knowledge or consent of the claimant and against his will. The claimant prayed that the vehicle be not condemned, or if condemned, that its lien be paid from the proceeds of the sale.

On the trial, the State proved by the Sheriff of Hall County that, on April 13, 1949, he seized the automobile in question on a public road in Hall County, Georgia, and at the time of the seizure the automobile was being operated by J. B. Helton and it contained 6½ gallons of non-tax-paid whisky, and that Helton said at the time of the seizure that the automobile belonged to him.

Herbert Whidby, a witness for the claimant, testified in part, that, on October 14, 1948, he was employed by the Liberal Finance Company as manager of its office and that he handled the purchase of the J. B. Helton conditional-sales-contract for the finance company, and that at the time this paper was purchased he did not have any information or knowledge that J. B. Helton was engaged in the liquor business or ever had been, although he made some investigation of Helton before he purchased this paper for the finance company; that he did not confer with Mr. Pope, the president of the finance company, or with Mr. W. A. Crow, the secretary-treasurer and vice-president thereof, about the paper before he bought it.

Ferd Bryan, the present Sheriff of Hall County, recalled as a witness, testified that he had worked with W. A. Crow, the secretary-treasurer of the finance company, in the sheriff's office while Crow was sheriff, and that he had known J. B. Helton and that his general reputation in the community where he lived for dealing in liquor and transporting liquor was bad, that is, he had the general reputation of illegally dealing in liquor and transporting liquor.

C. W. Wilson, an employee of the State Revenue Department, testified that he had known J. B. Helton for three or four years and that he had the general reputation of dealing in and transporting whisky; that the witness worked as a deputy sheriff with W. A. Crow, the secretary-treasurer of the Liberal Finance Company, while Crow was sheriff, and that Helton had the reputation of dealing in liquor at the time the witness worked with Crow.

W. A. Crow testified to the effect that, on October 14, 1948, he was Sheriff of Hall County and was also secretary-treasurer of the Liberal Finance Company at that time and that his duties as an officer of the finance company were to keep the accounting of the money, and records of the stockholders' meetings; that he did not buy contracts or make loans for the company at that time; that he did not approve Helton's application to the finance company for a loan or approve the purchase of the sales contract from the Lee Waldrip Motor Company at the time it was purchased; that he knew J. B. Helton and that he had a bad reputation for dealing in liquor at the time Crow was sheriff and that he knew this prior to and on October 14, 1948, and that he probably heard that Helton was in the liquor business after that; that he did not know about the purchase of the sales contract at the time it was bought, but learned about it some few days, maybe a week, later; that if he had known that Helton was making application for a loan or that the finance company contemplated buying this sales contract he would have stopped it, as he knew that Helton had the reputation for handling and dealing in liquor; that Whidby did not check with him on J. B. Helton, but that he was over at the finance company every day or so at that time and did check into the various loans and see how much money they were getting and that he was active in the affairs of the finance company during that period.

An indictment at the July term, 1948, of Hall Superior Court, charging J. B. Helton with illegal possession of non-tax-paid whisky, with a plea of guilty thereon by Helton on January 15, 1949, and the sentence of the court, and an indictment against J. B. Helton at the July term, 1946, of said court, for the same offense, with a plea of guilty entered by Helton on March 1, 1947, and the sentence of the court, and the registration certi-

ficate of the Ford automobile in the name of J. B. Helton as owner, were introduced in evidence by the State.

The conditional-sales-contract was introduced in evidence by the claimant, and this contract contains the following provisions: "Time being of the essence of this contract, it is agreed that if any one of said instalments shall remain unpaid for more than three days after maturity then all of the remaining instalments may, at the option of the holder, be declared due and collectible at once, without any notice. . . If said automobile is used in the transportation of any beverage in violation of any Federal or State law, or of any city ordinance or for any other illegal purpose . . or if I should violate any of the terms of said contract, or if any circumstances arise which makes vendor or assigns deem its position insecure, that said vendor or assigns may, at its option, declare all of the remaining instalments unpaid, due and collectible at once without any notice to me. It is agreed further by the undersigned that in case of default of payment of any instalment for three days after maturity, or in case of violation of any other term of said contract, that vendor or assigns, at its option, may either with or without legal proceedings, retake possession of said property." There was evidence to the effect that some of the instalments were in default for more than three days after the contract was transferred to the finance company.

The jury returned a verdict for the State, condemning the automobile; the claimant made a motion for a new trial on the general grounds and four special grounds; the motion was overruled; and the claimant excepted.

■ Special ground 1 of the motion complains that the court, at the conclusion of the evidence, erred in ruling that the burden of proof was on the claimant, Liberal Finance Company, to show that the automobile which was seized while transporting whisky was so used without the knowledge or consent or connivance of the claimant, instead of being on the State to show that it was so used with the knowledge or consent or connivance of the claimant, and special ground 3 of the motion complains of an excerpt from the charge of the court to the effect that the burden was on the claimant in this same respect. It is contended by the intervenor that the law places the burden of proof of such

issue on the State and that the ruling and charge complained of in grounds 1 and 3 of the motion were erroneous and harmful to the movant and placed an undue and illegal burden upon the movant. Code § 58-207, as amended by the act of 1946 (Ga. L. 1946, pp. 96, 98), authorizing and providing for the condemnation of vehicles, etc., used in conveying and transporting liquor in violation of the laws of this State, provides, in paragraph (g): "Any party at interest may appear, by answer under oath, and make defense; the owner or lessee shall be permitted to defend by showing that the property seized, if used illegally by another, this was done without the knowledge, connivance or consent, express or implied, of such owner or lessee. . . The holder of any bona fide lien on the property so seized shall be protected to the full extent of his lien: Provided such holder shows that the illegal use of the property was without his knowledge, connivance or consent, express or implied." See *Consolidated Loan Co.* v. *State,* 75 *Ga. App.* 77 (2) (41 S. E. 2d, 802). Under the law as it now exists the burden of proof was on the intervenor to show that the illegal use of the automobile was without its knowledge, connivance, or consent, express or implied; and the trial court did not err in the ruling and charge complained of in special grounds 1 and 3 of the motion. The cases cited and relied on by the plaintiff in error in its brief dealing with this question were decided prior to the acts of 1946, supra, which amended Code § 58-207, and said cases are not controlling in the present case in this respect.

■ It is alleged in special ground 2 that the court erred in charging the jury: "Should it appear upon the trial of the case that said vehicle, conveyance, boat or vessel, was so used with the knowledge or consent of the lessee the same shall be sold by order of the court after such advertisement as the court may direct." It is contended that the court erred in not using the term "owner" along with the word "lessee," and thus instructed the jury that if the vehicle was used with the knowledge and consent of the lessee it should be condemned; and that it was confusing as J. B. Helton, the lessee, was himself using the vehicle to illegally transport liquor. The judge throughout his charge, except in this one instance, used the term "owner or lessee," and we do not think the omission of the word "owner" in this excerpt

was in any way misleading or confusing to the jury. This ground of the motion is without merit.

■ It is contended in special ground 4 that the court erred in charging the jury: "Gentlemen, if you believe that W. A. Crow was the secretary and treasurer of the Liberal Finance Company on October 14, 1948, and that he acquired knowledge of J. B. Helton having liquor cases here, transporting liquor, but at the time he acquired that knowledge he was not on business or engaged in business for the Liberal Finance Company, then you would find in favor of the claimant in this case. But if, on the other hand, you believe that at the time he had that knowledge he was on business for the Liberal Finance Company, then you would find in favor of the plaintiff"; because (a) the last sentence of this charge is a misstatement of the law, in that it imputes to the corporation notice of a fact, the knowledge of which was acquired by a person who afterwards became an officer of the corporation, and who acquired it at a time when he was not engaged in business of or for the corporation; that (b) it was confusing and contradictory; and (c) was misleading to the jury.

The judge had charged the jury, "that if you believe that the defendant at the time they entered into this contract or bought this paper, in which the automobile is included, that at that time if the Liberal Finance Company did not have any knowledge that J. B. Helton was dealing in liquor or that he would use this automobile for the purpose of dealing in liquor, then you would find in favor of the claimant, provided you believe that he has proved that by a preponderance of the evidence"; and later charged, "Gentlemen, regardless of what knowledge might have come to the Liberal Finance Company after October the 14th, it would not have any weight or effect in this case in any way. The gist of the thing is the knowledge at the time they bought this paper from Lee Waldrip Motor Company."

Herbert Whidby handled the transactions and purchased the conditional sales contract for the Liberal Finance Company. He made an investigation as to Helton at that time and testified that he did not have any information that Helton was engaged in the liquor business or ever had been when he purchased the sales contract for the Liberal Finance Company. W. A.

Crow testified that he acquired the information that J. B. Helton had a bad reputation for dealing in liquor while he (Crow) was sheriff and before the Liberal Finance Company was organized on October 1, 1948. He did not remember receiving any additional information in this respect after the finance company was organized—it was possible that he had heard, after that, that Helton was in the liquor business, but he could not say about that.

The portion of the charge excepted to is in conflict with the two charges just above set out, and the jury may have been misled by this charge in believing that if Crow was on business for the finance company at some time after he acquired the knowledge that Helton was engaged in the liquor business then it could find in favor of the plaintiff. We think the charge excepted to was confusing and misleading to the jury and was error.

4. Furthermore, we are of the opinion that the evidence shows that the finance company did not have notice on October 14, 1948, the date when the conditional sales contract in question was purchased by it, that J. B. Helton was engaged in dealing in liquor. This is the theory upon which the case was submitted to the jury by the trial judge. It follows that the court erred in overruling the claimant's motion for a new trial.

*Judgment reversed. Felton and Worrill, JJ., concur.*